*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* E. E. SAYRANIAN, Minor.

UNPUBLISHED
August 18, 2022

No. 359674
Macomb Circuit Court
Family Division
LC No. 2019-000093-NA

Before: GADOLA, P.J., and CAVANAGH and K. F. KELLY, JJ.

PER CURIAM.

Respondent appeals as of right the order of the trial court terminating her parental rights to her minor son, EES, under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), (c)(*ii*) (other conditions exist), (g) (failure to provide proper care or custody), (j) (likelihood child will be harmed if returned to parent), and (l) (parental rights to another child were voluntarily terminated). We affirm.

## I. FACTS

In April 2019, petitioner, Department of Health and Human Services, removed EES, then seven years old, from respondent's care. The removal of the child coincided with respondent being released from hospitalization for mental illness and with respondent being evicted from her housing. At the conclusion of the preliminary hearing, the trial court placed EES under the care of petitioner and authorized the filing of the petition. The petition alleged that it was contrary to the welfare of EES to remain in the home because of respondent's unresolved mental illness, substance abuse, and housing instability, and that respondent had refused to participate in a voluntary safety plan for the child. Petitioner also alleged that respondent's older child previously was removed from her care in 2009 due to respondent's unresolved mental illness, housing instability, lack of proper supervision, and physical neglect, and that respondent's parental rights to that child were terminated in 2010. Petitioner further alleged that respondent did not have contact with another of her children who was placed with his legal father.

Respondent pleaded no contest to the allegations of the petition and the trial court adopted the parent-agency treatment plan. The objective of the treatment plan was overcoming the barriers to reunification of respondent with EES. The specific goals identified in the treatment plan were for respondent to abstain from substance use, obtain and maintain emotional stability, maintain a

parental bond with the child, establish an adequate legal source of income for herself and EES, obtain and maintain suitable housing, maintain a lawful lifestyle, and to comply with services and with the orders of the trial court.

Petitioner then provided numerous services to respondent and to the child, including drug testing for respondent, mental health services for respondent, counseling for the child, and supervised visitation. Over the course of several months, hearings were held regarding respondent's progress. Petitioner reported that respondent was sometimes in compliance with the services mandated by the parent-agency treatment plan, but overall was failing to successfully address the main barriers to reunification, being her mental illness and lack of housing. After several months, petitioner filed a supplemental petition seeking termination of respondent's parental rights to EES under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j). During trial, petitioner clarified that it also was seeking termination under MCL 712A.19b(3)(l), on the basis that respondent's parental rights to another child previously were terminated.

Testimony at trial demonstrated that respondent made some progress shortly before trial but largely had not overcome the barriers to reunification. Foster care case workers working with respondent testified that from 2019 through early 2021, respondent only partially complied with the parent-agency treatment plan; respondent sometimes missed drug screens, attended therapy as directed but did not appear to make progress in therapy, and lacked adequate income and housing during that time. Respondent was psychiatrically hospitalized four times from July 27, 2019 through March 20, 2021, for several days or weeks on each occasion. Although respondent complied in part with mental health services, she eventually was discharged from ongoing services because the therapist believed respondent was not being honest and was denying her mental illness.

Respondent participated in supervised visits with the child during this period, and there appeared to be a bond between respondent and EES. But although respondent successfully completed a parenting program, she was never able to move to unsupervised visits with EES due to her inappropriate behavior during visits. During some visits respondent talked to herself and had verbal outbursts that had a negative effect on EES, including screaming at imaginary people whom she called "Mike" and "Larry," yelling at EES and the foster care worker, using inappropriate language, and disparaging the child. The visits eventually were suspended due to respondent's inappropriate behavior.

The foster care case supervisor testified that as of the time of trial respondent had legal income and had obtained housing a few weeks before the trial. The clinical social worker working with respondent testified that that her mental illness was controlled at the time of trial. Despite the recent progress, however, the foster care case supervisor opined that respondent's ongoing instability rendered her unfit to care for the child.

The therapist working with EES testified that EES was diagnosed with ADHD for which he takes medication, and also was diagnosed with PTSD. At the time he began working with EES, the child was confused and concerned about being separated from his parents and placed in foster care, and was hyperactive, impulsive, and distractible. The therapist testified that EES is making some progress with self-control, but has a long way to go. EES has learning problems and was substantially behind in school; the therapist anticipated that EES will require extra assistance in school as well as psychiatric help for a long time.

EES's foster mother testified that EES had lived in her home for two years at the time of trial. She testified that when EES was placed in her home in November 2019, he was frightened and insecure, but by the time of trial he had become very outgoing, appeared happy, was eating well and growing, had bonded with her son, and had become part of the family. She testified that EES only occasionally mentioned respondent, did not appear to understand that respondent had mental illness, once told her that he was afraid of respondent, and told her that he wanted to stay in the foster home. She further testified that she was interested in adopting EES if respondent's parental rights were terminated.

Respondent testified that at the time EES was removed from her care she was struggling with mental illness and had admitted herself to a hospital for mental health treatment. She further admitted that her visits with the child were suspended after she exhibited mental illness while visiting with the child in March 2021, but later qualified this by stating that she and the foster care worker were equally to blame for her visits being suspended. Respondent testified that after receiving different prescription medications in March 2021, her mental health improved, and she was making progress in therapy. She also testified, however, that her mental health problems were not serious, that she was compliant with all aspects of the parent-agency treatment plan at all times, and that her lack of progress in housing and employment before March 2021 was due to the coronavirus pandemic.

At the conclusion of trial, the trial court terminated respondent's parental rights to EES, finding that clear and convincing evidence supported termination of respondent's parental rights to EES under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), (j), and (l), and that termination of respondent's parental rights was in the best interests of the child under MCL 712A.19b(5). Respondent now appeals.

## II. DISCUSSION

### A. STATUTORY BASIS

Respondent contends that the trial court erred by finding that clear and convincing evidence supported terminating her parental rights. We disagree.

To terminate parental rights, the trial court must find that at least one basis for termination under MCL 712A.19b(3) has been proven by clear and convincing evidence. *In re Keillor*, 325 Mich App 80, 85; 923 NW2d 617 (2018). Only one statutory basis for termination under MCL 712A.19b(3) need be established by clear and convincing evidence to warrant termination of parental rights. *In re Martin*, 316 Mich App 73, 90; 896 NW2d 452 (2016). In this case, the trial court terminated respondent's parental rights under MCL 712A.19b(3) (c)(*i*), (*ii*), (g), (j), and (l), which provide:

(3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

* * *

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

(*ii*) Other conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions, the conditions have not been rectified by the parent after the parent has received notice and a hearing and has been given a reasonable opportunity to rectify the conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

\* \* \*

(g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

\* \* \*

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

\* \* \*

(l) The parent's rights to another child were voluntarily terminated following the initiation of proceedings under section 2(b) of this chapter or a similar law of another state and the proceeding involved abuse and included 1 or more of the following, and the parent has failed to rectify the conditions that led to the prior termination of parental rights:

(*i*) Abandonment of a young child.

(*ii*) Criminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate.

(*iii*) Battering, torture, or other severe physical abuse.

(*iv*) Loss or serious impairment of an organ or limb.

(*v*) Life-threatening injury.

(*vi*) Murder or attempted murder.

(*vii*) Voluntary manslaughter.

(*viii*) Aiding and abetting, attempting to commit, conspiring to commit, or soliciting murder or voluntary manslaughter.

(*ix*) Sexual abuse as that term is defined in section 2 of the child protection law, 1975 PA 238, MCL 722.622.

We review for clear error the trial court's decision that at least one statutory basis to terminate parental rights was proven by clear and convincing evidence, as well as the trial court's factual findings. *In re Keillor*, 325 Mich App at 85. The trial court's decision to terminate parental rights is clearly erroneous if "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re JK*, 468 Mich 202, 209-210; 661 NW2d 216 (2003). We will not conclude that a finding by the trial court is clearly erroneous unless it is more than possibly or probably incorrect, *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011), and we afford the trial court's dispositional orders "considerable deference on appellate review." *In re Sanders*, 495 Mich 394, 406; 852 NW2d 524 (2014).

In this case, the record supports the trial court's finding under MCL 712A.19b(3)(c)(*i*) that the conditions that led to the adjudication continued to exist and there was no reasonable likelihood that the conditions would be rectified within a reasonable time considering the child's age. Termination of parental rights under subsection (c)(*i*) is warranted when "the totality of the evidence amply supports" the finding that the parent has not achieved "any meaningful change in the conditions" that led to the trial court assuming jurisdiction of the child. *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009). Here, the conditions that led to adjudication were respondent's mental illness, substance abuse, and housing instability. The child was removed from respondent's care in April 2019 shortly after respondent was released from hospitalization for mental illness. The foster care case supervisor testified that respondent was again psychiatrically hospitalized four times from July 2019 through March 20, 2021, with each hospitalization lasting several days or weeks. Respondent complied in part with mental health services, but she eventually was discharged from outpatient services because the therapist believed respondent was not being honest regarding her mental illness.

Although respondent successfully completed a parenting program, she was never able to move to unsupervised visits with EES due to her inappropriate behavior during visits, including screaming at imaginary people, yelling at EES and the foster care worker, using inappropriate language, and disparaging the child. Thus, despite recent progress, the evidence indicated that respondent's ongoing mental instability rendered her unfit to care for EES.

This conclusion is further supported by the evidence that respondent's mental illness was a major factor in the termination of her parental rights to an older child in 2010. Given that respondent did not successfully address her mental illness between 2009 and 2020, and was hospitalized for her mental health as recently as March 2021, it seems unlikely that respondent in April 2021 suddenly overcame her mental illness to the extent that she was capable of caring for a child with special needs. Moreover, respondent's testimony that her mental illness is a minor problem and that her failure to address the barriers to reunification before April 2021 was caused

by the coronavirus pandemic demonstrates respondent's inability or unwillingness to address the main barrier to reunification, which was her mental health.

Two other barriers to reunification were respondent's substance abuse and housing instability. The parent-agency treatment plan called for respondent to refrain from substance use. Although respondent participated in drug screening, the record does not indicate definitively whether respondent continued using substances. The record was clear, however, that respondent did not obtain housing until a few weeks before trial. The foster care case supervisor testified that the housing appeared appropriate and respondent had paid the rent with funds from her newly-found employment. As the trial court found, however, although obtaining housing represented progress for respondent, she did not do so until late in 2021 and at the time of trial had not demonstrated that she could maintain stable housing. As a result, EES, who was seven years old when removed from respondent's care in April 2019, was in late 2021 a nine-year-old child still waiting to see if his mother could maintain her newly-found housing. The trial court therefore did not clearly err by finding that the conditions that led to adjudication continued to exist and there was no reasonable likelihood that the conditions would be rectified within a reasonable time considering the child's age.

The trial court also found that termination was warranted under MCL 712A.19b(3)(g) because although respondent was financially able to do so, she failed to provide proper care or custody for the child and there was no reasonable expectation that she would be able to provide proper care and custody within a reasonable time considering the child's age. A parent's failure to benefit from a service plan is evidence that the parent will not be able to provide the child with proper care and custody, warranting termination under MCL 712A.19b(3)(g). See *In re White*, 303 Mich App 701, 710-711; 846 NW2d 61 (2014). In this case, shortly before trial respondent demonstrated that she was able to obtain a job and earn income sufficient to obtain suitable housing. But although able to do so, respondent had a long history of failing to maintain income or housing, which contributed to the termination of her parental rights to her older child in 2010. After EES was removed from her care in April 2019, she again failed to maintain stable income and housing until shortly before trial despite assistance provided under the parent-agency treatment plan. The trial court correctly observed that despite her recent progress, it had taken respondent over two years to begin to acquire basic stability, and respondent had yet to demonstrate consistent ability to parent a child with special needs. The trial court therefore did not clearly err by finding that clear and convincing evidence supported termination under MCL 712A.19b(3)(g).

The trial court also found that termination was warranted under MCL 712A.19b(3)(j) because there was a reasonable likelihood, based on respondent's conduct or capacity, that the child will be harmed if returned to respondent's home. A parent's failure to benefit from a service plan is evidence that the child will be harmed if returned to the parent's home, warranting termination under MCL 712A.19b(3)(j). See *In re White*, 303 Mich App at 710-711. In this case, although respondent participated in some mental health services, she demonstrated no benefit from the services until shortly before trial. She was hospitalized due to her mental health several times while the case was pending before the trial court, and yet respondent testified that that she did not consider her mental health a barrier to parenting EES. She testified at trial that her mental health was not a serious problem and that her failure to progress in the parent-agency treatment plan was the result of the pandemic. The trial court therefore did not clearly err by finding that clear and

convincing evidence supported termination of respondent's parental rights to EES under MCL 712A.19b(3)(j).

We disagree with the trial court's finding that termination was warranted under MCL 712A.19b(3)(c)(*ii*), which provides for termination when other conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions, the conditions have not been rectified by the parent, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age. The trial court in this case did not identify what other conditions caused EES to come within the jurisdiction of the trial court, and the record does not demonstrate additional conditions. The trial court therefore clearly erred by finding that termination was warranted under MCL 712A.19b(3)(c)(*ii*).

Similarly, the record does not support the finding that termination was warranted under MCL 712A.19b(3)(l). Under that subsection, termination is supported when the parent's rights to another child were voluntarily terminated in proceedings, the termination involved abuse identified in the statute, and the parent failed to rectify the conditions that led to the prior termination. In this case, the parties do not dispute that respondent's parental rights to an older child were terminated in 2010, but the record does not establish that the previous termination was based upon any type of abuse. The record therefore does not support a finding that termination was warranted under MCL 712A.19b(3)(l). However, because only one statutory basis for termination must be demonstrated to warrant termination of parental rights, reversal is not required in this case because termination was supported under MCL 712A.19b(3)(c)(*i*), (g), and (j). See *In re Martin*, 316 Mich App at 90.

## B. BEST INTERESTS

Respondent contends that the trial court clearly erred by finding that a preponderance of the evidence demonstrated that termination was in the child's best interests. We disagree.

Once a statutory ground for termination has been demonstrated, the trial court is required to terminate the parent's parental rights if a preponderance of the evidence establishes that termination is in the best interests of the child. MCL 712A.19b(5); *In re Medina*, 317 Mich App 219, 237; 894 NW2d 653 (2016). We review for clear error the trial court's decision regarding a child's best interests. *In re Atchley*, ___ Mich App___, ___; ___ NW2d ___ (2022) (Docket Nos. 358502 and 358503); slip op at 5.

When determining whether termination is in the child's best interests, the trial court should weigh all evidence available to it, *id*., considering a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, the advantages of a foster home over the parent's home, the length of time the child was in care, the likelihood that the child could be returned to the parent's home in the foreseeable future, and the parent's compliance with the case service plan. See *In re Payne/Pumphrey/Fortson*, 311 Mich App 49, 63-64; 874 NW2d 205 (2015). The trial court also should consider the child's safety and well-being, including the risk of harm to the child if returned to the parent's care. See *In re VanDalen*, 293 Mich App 120, 141-142; 809 NW2d 412 (2011).

In this case, trial court considered the appropriate factors, observing that EES needed permanence that respondent was unable to provide due to her mental illness and had failed to provide for over two years. The trial court also considered that the child was thriving in his placement with a foster family. These findings are supported by the testimony of the foster care case supervisor regarding respondent's delayed progress on the goals of the parent-agency treatment plan and the testimony of the child's therapist and the child's foster mother regarding the child's needs. The trial court therefore did not clearly err by determining that termination was in the child's best interests.

Affirmed.

/s/ Michael F. Gadola
/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly